35 C.C.P.A.(Patents)

## Application of HUNTER.

### Patent Appeals No. 5441.

Court of Customs and Patent Appeals.

May 4, 1948.

Rehearing Denied June 1, 1948.

Watson, Bristol, Johnson & Leavenworth, of New York City (David A. Woodcock and Norman N. Schuttler, both of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellant here seeks review and reversal of the decision of the Board of Appeals of the United States Patent Office sustaining the rejection by the Primary Examiner of the seven claims, numbered 1 to 7 inclusive, of appellant's application for patent entitled "Composing Machine Elements and Method for Distinguishing Fonts."

More specifically appellant's alleged invention relates to an arrangement whereby the operator of a linotype or similar machine may distinguish by means of colors between the matrices, belonging in different fonts, by the use of which matrices type for printing is cast or molded line by line. The matrices are of metal—usually brass. One edge of each matrix is a "reading," or "reference," edge, visible to the operator of the machine when the matrices are in line, and the opposite edge is indented with

a die for the formation of a letter or character. Upon the reading edge there is stamped a letter or other character corresponding to the die on the opposite edge. The fonts are usually kept in magazines within which the matrices for each letter or character are arranged in separated partitioned channels. The machine may have from two to eight magazines carrying matrices for different styles of type—plain-faced, italics, bold-faced, etc.—attached, and other magazines may be conveniently available for substitution by the operator.

The machine is equipped with a key board resembling that of a typewriter showing letters, figures, punctuation marks, etc. In operation the mechanic, or "type-setter", touches the key upon which the desired letter or character is depicted, and the matrix falls into place in a container called an assembler or assembly box. It is necessary to adjust the matrices for each line by proper spacing between the words so that the lines will be of uniform lengths and even at both ends adjacent the "rules" which separate the columns. It sometimes happens that an unusual character not carried in one of the regular magazines is desired and in such event the operator may insert it by hand.

From each line of matrices a solid line of type is cast with molten metal. If there be an error in the line, the entire line must be reset and recast in order to make the necessary correction.

It not infrequently happens that different styles of type are used in the same line. For example, one word in a line may be of script and all the other words of plain type. In such cases in distributing the matrices after the line of type has been cast errors sometimes occur and a matrix will be returned to the wrong font or the matrices may become mixed in other ways with which those skilled in the printing art are familiar.

It is desirable that the operator of a machine may be able readily to detect a matrix from a wrong font at the time the matrices are being set in line so that it may be corrected before the line of type is cast; also it is desirable that the matrices may readily be identified as to font as they are being redistributed to the magazines. Appellant teaches the doing of this by applying different colors on the reading, or reference, edges of the matrices belonging to the different fonts. The claims do not designate any particular color for any particular style of type, but the specification gives illustrations, such, for example, as using light orange for italics, light green for pica, etc. It is noted that the specification states: "The term 'color' is used herein to include white, black and grey as well as what are more strictly colors."

All of the appealed claims are product claims, and No. 1 is representative. It reads as follows: "1. In a composing machine having a plurality of magazines each containing a different font of elements having reference faces adapted to be exposed when a line of said elements is composed, the combination of one font of elements having a uniform color upon the reference face of its said elements, with a second font of elements having a different uniform color upon the reference face of its said elements."

So far as we can discern, there are no limitations in any of the other claims which require separate consideration. In other words, all seven claims stand or fall together.

The following patents were cited as references by the examiner and treated as such by the board: Dodge, 786,199, Mar. 28, 1905; Clarke, 965,155, July 26, 1910; Hill, 1,466,437, Aug. 28, 1923; Shinohara, 1,657,437, Jan. 24, 1928; Barker, 1,929,383, Oct. 3, 1933.

In his rejection of October 21, 1944, which was declared to be final, the examiner based his rejection "on the patent to Hill in view of the patents to Clarke and Shinohara." Thereafter appellant filed certain affidavits and exhibits relating to utility and an argumentative letter in which the patent to Dodge was referred to. The examiner responded thereto in an "advisory action" in which, after discussing the Dodge patent and citing the Barker patent, he asserted: "The proposed argument, affidavits and exhibits are not considered to place the application in condition for allowance and thus are not properly respon-

sive to the final rejection of Oct. 21, 1944 and have not been entered."

Subsequently counsel for appellant requested the entry of the documents so alluded to, and while there is no specific statement that they were entered, we assume that they were because "affidavits and exhibits" are referred to as having been presented in the statement of the examiner following the appeal to the board, and "affidavits" are referred to in the latter's decision.

It is noted that the statement following the appeal to the board was signed by a different individual from the one before whom the application was prosecuted, and in the statement, after reciting rejection of the claims "as unpatentable over the disclosures of the patents to Hill, Clarke and Shinohara," it is said: "The claims also are considered to be unpatentable over Dodge and the patent to Barker, cited in the advisory action given after the final rejection. The applicant has waived any right to resume the prosecution of the application before the Primary Examiner resulting from the addition of the latter reference to the record."

The board approved both rejections.

The patent to Hill (which appears to have been assigned to the assignee of the application here involved, and which expired several years ago) discloses a process (the claims are process claims) in which the reading or reference edge, visible to the operator, of a brass matrix is "dark or black" and has on it, at a designated point, an indented letter or other character that may be filled with "a lighter colored or white pigment." Evidently "lighter colored" means lighter than the "black or dark" surface portion of the edge of the matrix. the light colored or whitened letter or character identifies the letter or character on the opposite edge of the matrix fashioned to receive the molten metal which forms the type.

The patent to Shinohara relates to type for printing which is made of glass. It recites that "the classification of types with reference to the style of characters may be made by imparting simply different colorations to the material composing the printing types."

The Clarke patent relates to matrix plates for forming printing type, the plates being distinguishable by having their surfaces differently colored. The colors however are not on the "reading," or "reference," edge of the matrix, as in the Hill patent and in the involved application, but on one of the sides of the plate. Apparently the color would not be visible to the operator after the matrices fall into line in the assembly box and hence the colors would not be of aid in determining the font in which a matrix standing in line belongs, but, obviously, it would be of aid where the matrices are handled manually.

The Dodge patent which, it is noted, was issued in 1905 and which shows on its face that it was assigned to Mergenthaler Linotype Company, a pioneer in the field sometimes loosely referred to as the "type-setting" field, discloses a matrix having in its lower end what is described as a font distinguishing notch, and in the front edge, which is visible to the operator, a transverse notch, or transverse notches, "having a distinctive location for each face of a given size"; that is, according to the specification, "six-point matrices carrying a light-face character will have the notch in a different location from other six-point matrices carrying black faces, italics, or characters of other styles."

The Barker patent does not relate to the printing art, but to a filing or index system in which are used cards that have tabs to which distinctive colors are applied, and it is taught, in substance, as recited in the brief of the Solicitor for the Patent Office, that: "* * * The tabs are so arranged that similar cards have similarly colored tabs and the colored tabs may be used both as an indication of the location of a desired card as well as an indication of the misfiling of a card. * * *"

The question here is whether having before him the art which has been described it required exercise of the inventive faculty on the part of appellant to evolve the color arrangement shown in the application and hereinbefore described.

Appellant relied below and here relies strongly upon certain letters introduced as exhibits and certain affidavits presented after the final rejection of the claims by the Primary Examiner.

The letters referred to appear to be from persons engaged in, or having some knowledge of, the work carried on in the composing rooms of different newspapers. They are commendatory of appellant's arrangement, and we have no reason to doubt the good faith of the writers, but unhappily for appellant they are not sworn to and did not constitute evidence which could be considered under the rules of practice of the Patent Office, nor can they be accepted as evidence here.

There are two affidavits. One is by Mr. Clifford Yewdall, the Secretary-Treasurer of Matrix Contrast Corporation, the assignee of the involved application and of the Hill patent, supra. He states that he had read the letters referred to and that they "are typical of the satisfaction which users have found in the Hunter invention as a final solution to a long experienced difficulty." This, of course, cannot make evidence of letters not sworn to.

Mr. Yewdall testified further, in effect, that he was familiar with the Hill patent which was at one time involved in litigation (See Matrix Contrast Corporation et al. v. Kellar, D. C., 34 F.2d 510) and the Clarke patent and stated "neither I nor anyone else, so far as I know, ever got any suggestion from the Hill and Clarke patents for solving the font difficulty in the manner which the Hunter application has now taught." Mr. Yewdall is not shown to have had any part in developing the arrangement. Mr Hunter is the applicant and there is no affidavit by him.

The only other affidavit is a joint one made by two gentlemen who had had over twenty years experience in printing during which time, they stated, they had been familiar with the operation of multiple line casting machines using several different fonts of matrices or "mats." At the time of testifying one of them, Mr. Arthur H. Weiss, was general foreman and the other, Mr. George Kirchner was chief machinist in the employ of the New York Post.

Their testimony was highly commendatory of appellant's arrangement. . Among other things they said: "This is the first effective means we have ever known for preventing mistakes in mixing mats from different fonts, and it has practically eliminated trouble from that source. * * *"

They pointed out in effect the difficulties and loss of time resulting from mixing fonts, and stated: "The new colored matrices save eyestrain for the operators as well as enabling errors in font to be quickly seen and corrected in the assembler, even when dealing with small type. This colored matrix invention has been needed to solve this difficulty ever since we became acquainted with multiple magazine line casting machines, and certainly for more than twenty years, without anyone previously having devised this cure, so far as we know."

The affidavit bears upon the utility of appellant's arrangement, but not upon commercial success. There is in fact no evidence as to the extent to which appellant's plan has been exploited commercially.

The board did not question the matter of utility but upon the contrary said: " * * We concede, as did the Examiner, that the use of appellant's idea probably results in less font errors, and while the use of such an idea may be ingenious, we do not think it amounts to invention over the references such as Shinohara or Clarke, which are in the same general art as appellant's, and other common uses of colors to detect and reduce errors in filing such as shown by Barker. * * *"

The fact that the arrangement has utility, however, does not mean that its development resulted from the exercise of the inventive faculty.

The only change required in the Hill patent to produce one form of appellant's arrangement is to apply, say, red, pink, orange or other colored pigment instead of white to the character on the reading, or reference, edge of the matrix—the edge visible to the operator when the matrices are in line. The only modification of the Clarke patent required for the same purpose is to apply the colors shown by Clarke to the edge of the matrix in-

stead of upon its side. The Shinohara patent shows the use of coloration to ·distinguish classes of type. It seems quite clear to us that even if the Dodge and Barker patents were disregarded (and we do not hold that they should be) it is obvious that there is no invention in appellant's plan over the other art cited.

The decision of the board is therefore affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.